This bill recites, in effect, that in 1926 the defendant secured a judgment for $475 and costs and that more than two years thereafter certain lands of the complainant, which was the judgment debtor, were sold under an execution and purchased by the judgment creditor for the sum of $150. It also says that the complainant did not know that the sale was to be held and, of course, was not represented thereat. Two points are made in the bill: one is that the complainant's lands are not subject to sale on execution; the other is that equity should relieve because of the disproportion between the amount bid by the defendant and the market value of the lands so purchased. The first point has already been decided adversely to the complainant on the return of an order to show cause allowed on the filing of the bill. This is the law of the case and is binding, not only upon the parties but also upon the court. Black Law Jud. Prec. 262. *Page 580 
The bill alleges that the lands in question are worth $24,000. Making due allowance for the opinion thus expressed, there can be no question but that the complainant's case is a hard one, because every indication is that its lands were worth very much more than the amount bid at the sale and much more than the amount of the judgment at law. Recognizing, however, that mere inadequacy is not sufficient to disturb a judicial sale (Hoffman v. Godfrey, 79 N.J. Eq. 617), the bill couples therewith the allegation that the execution sale was held more than two years after the defendant secured his judgment in a law court and it is prayed that because of this peculiarity, the sale should be set aside upon the complainant doing equity, as it offers to do.
On this motion the complainant relies upon the case ofRaphael v. Zehner, 56 N.J. Eq. 836, and an earlier opinion upon which that decision was based. In the case just named the opinion discloses that delays and accommodations had been given by the judgment creditor, "such as fairly to entitle complainant to notice from this judgment creditor that the sale would be made under execution, if he intended to take that step for the satisfaction of the judgment." The bill under examination presents no such statement of fact. It is a far different situation where a judgment creditor fails to promptly execute his judgment, as in the case at bar, and the situation where he lulls the judgment debtor into a false sense of security by a positive course of action, as in the Raphael Case.
Furthermore, the opinion in that case discloses that there was either a tacit, or an express, understanding that upon receipt of such notice the judgment debtor would bid enough at the sale to satisfy the judgment. Not only does it appear that there was such an agreement, but the judgment creditor in order to go through the form of keeping his word, did actually give some notice, but it was given to the judgment debtor's drunken husband and thus failed to arrive at its legal destination.
These facts present a situation which has no similarity to the case of a corporation dealing at arm's length with its *Page 581 
creditor and taking no steps to protect its rights or property in the face of solemn notice that an execution might be secured and a sale held thereunder with every result that has now been accomplished.
In the earlier case of Kloepping v. Stellmacher, 21 N.J. Eq. 328,
there was even a clearer concatenation of events such as were presented in the Raphael Case and a more inequitable loss of property. In that case judgment had been entered before a justice of the peace, the opinion says, "for about $44," upon which there had been paid $36 with an understanding that the insignificant balance might be discharged in monthly installments, and that thereafter a subsequent judgment was obtained on a transcript of the earlier one, which was docketed, and under which the sale attacked was held. In addition to these shocking facts, Chancellor Zabriskie comments upon the ignorance of the judgment creditor and the not unreasonable belief that one judgment was all that would be taken to collect a single debt, and that refusal to give relief would have stripped them of everything they had.
Because of these equities this court was empowered to afford relief from the application of the strict rules of the common law. The mistakes therein described were direct causes of those judgment debtors being deprived of the opportunity to safe-guard their respective property rights at the execution sales. They came within the well-recognized equity jurisdiction in cases of mistake and in the earlier case it seems to me the chancellor was somewhat charitable when he said that the facts did not show fraud.
The legislature has fixed the time within which execution may be issued upon a judgment without reviving the same by scirefacias. The policy of the state in that respect is confided to its hands. Whether it would be wise to provide for actual notice in all cases, as many members of the bar think, would be a matter for that branch of the government to determine. There can be no doubt but that the complainant in this case will suffer a hardship, but it is not within the power of this court to afford relief in every case of hardship. *Page 582 
I can find no equitable principle or doctrine that the defendant violated in waiting for a period of two years, as allowed by law, before taking steps to provide satisfaction of his judgment. Our policy seems to be that one against whom a judgment is taken shall protect himself as best he can when his property is legally offered for sale under execution. It should have been previously said that the judgment has not been attacked and that there is no reflection upon the manner in which this sale was held. In view of these facts, it seems to me that it would be most improper for this court to interfere. I can conceive of no equity rule which could be laid down to govern a case like this which would comply with the prayer of the bill. In the absence of some violation of an established rule of this jurisdiction, then if two years' delay in enforcing a judgment were considered too long, would one a year, or six months? If so, then what number of months or weeks or days after the entry of a judgment should be allowed the judgment-creditor in which to take out an execution and bring on the sale? It seems to me that any such attempt to enlarge the jurisdiction of this court would result in chaos and that no title derived through such sale would ever be secure.
The bill should be dismissed. *Page 583